## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| GREEN PARTY OF TENNESSEE and CONSTITUTION PARTY OF TENNESSEE, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:13-cv-1128 Chief Judge Haynes |
| v. | ) ) | |
| TRE HARGETT, in his official capacity as Tennessee Secretary of State, and MARK GOINS, in his official capacity as Coordinator of Elections for the State of Tennessee, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM

Plaintiffs, Green Party of Tennessee and Constitution Party of Tennessee, filed this action under 42 U.S.C. § 1983 against the Defendants: Tre Hargett, in his official capacity as Tennessee's Secretary of State and Mark Goins, in his official capacity as Coordinator of Elections for the State of Tennessee. Plaintiffs assert several claims: (1) that Tenn. Code Ann. § 2-1-104(a)(31) and § 2-13-107(f), alone and in combination, impose an unconstitutional burden on Plaintiffs' First and Fourteenth Amendment rights as minor parties seeking status as a "Recognized minor party"; (2) that Plaintiffs' rights under the First and Fourteenth Amendments are violated by Tenn. Code Ann. § 2-1-114 requiring a minor or new political party to file an affidavit stating that the party does not advocate the overthrow of local, state or national government by force or violence and that the party is not affiliated with any such organization, before its nominees are placed on the ballot; and (3) that these statutes also violate the Equal Protection Clause of the Fourteenth Amendment.

1

In essence, Plaintiffs' principal claim is that based on the results of the 2012 election and , to retain their ballot access, Tenn. Code Ann. § 2-1-104(a)(31) and the 2012 amendment to § 2-13-107(f) required Plaintiffs to satisfy the voter requirement of "statewide political parties" after only one election. Plaintiffs' candidates were on the 2012 ballot with their parties' respective names as a result of this Court's Order in prior litigation. In a word, Plaintiffs' candidates received less than 5% of the total vote in the 2012 election. Based on those results and these statutes, Plaintiffs did not qualify as a "statewide political party" and lost their continued ballot access in future elections. Because of the 2012 election results and the 2012 amendments, Plaintiffs also lost their status as a "Recognized minor party". To regain that status, Tenn. Code Ann. §2-1-104(24) requires Plaintiffs to satisfy the same 2.5% voter signature requirement that this Court held unconstitutional in each of its prior decisions on Tennessee ballot access laws. Based upon these effects, Plaintiffs assert that these statutes impose an unconstitutional burden on Plaintiffs' First and Fourteenth Amendment rights to create and develop as new political parties.

Plaintiffs' other claims are that Section 2-13-107(f) alone violates the Due Process Clause by depriving Plaintiffs of their Court ordered status as a "Recognized political party", without notice or opportunity to be heard and without a legitimate state interest. In addition, Plaintiffs had only one election to secure continued ballot access as a "statewide political party", but Tenn. Code Ann. §2-1-104(a)(31) affords a "statewide political party" four calendar years to meet the minimum vote requirement for automatic ballot access. Plaintiffs cite this time disparity to qualify as a "statewide political party" as a violation of their rights under the Equal Protection Clause. Plaintiffs also cite the Defendants' refusal to acknowledge them as "Recognized minor part[ies]" until August 9, 2012, after the Sixth Circuit denied their motion for a stay in the parties' earlier litigation. According to

Plaintiffs, the effect of the Defendants' refusal was that Plaintiffs had only three months before the November 2012 election to disseminate to Tennessee voters their status as a "Recognized minor party".Finally, Plaintiff assert that Tenn. Code Ann. §2-1-114, requiring a certification of the Plaintiffs' disavowal of the overthrow of the government as a condition for ballot access violates the Due Process Clause under longstanding Supreme Court precedents.

Before the Court are the parties' motions for summary judgment. In their motion for partial summary judgment (Docket Entry No. 14), Defendants argue that Plaintiffs' challenge to Tenn. Code Ann. §2-1-114 lacks merit based upon their proof that the Democratic and Republicans parties have filed such affidavits and that State officials do not enforce this statute. Defendants also argue that Plaintiffs cannot assert a Section 1983 claim based upon the Tennessee constitutional provision cited by Plaintiffs, Tenn. Const. art. I, Sec. 1.[1]

In their motions for summary judgment (Docket Entry Nos. 18 and 19), Plaintiffs argue, in sum: (1) that Tenn. Code Ann. §2-1-104(a)(24)'s 2.5% signature requirement to secure the status of a "Recognized minor party" is unconstitutional based upon this Court's prior holdings; (2) that the combined effects of Tenn. Code Ann. §2-13-107(f) and Tenn. Code Ann. §2-1-104(a)(31) impose unconstitutional burdens on minor political parties seeking continued ballot access as a "Recognized minor party"; and (3) that Tenn. Code Ann. §2-13-107(f)'s disqualification provisions violate the Equal Protection Clause.

For the reasons set forth below, the Court concludes that Tenn. Code Ann. §2-1-104(31) and

---

[1] Art. I, Sec. 1 of the Tennessee Constitution provides that"...**all power is inherent in the people,** and all free governments are founded on their authority, and instituted for their peace, safety, and happiness; for the advancement of those **ends they have at all times, an unalienable and indefeasible right to alter, reform, or abolish the government in such manner as they may think proper.**" (emphasis underscored by Plaintiffs).

3

Tenn Code Ann. §2-13-107(f), alone and in combination, unduly burden Plaintiffs' rights under the First and Fourteenth Amendments to create and develop their political parties by securing ballot access for Plaintiffs' candidates. In addition, Tenn Code Ann. §2-13-107(f) violates Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment by denying Plaintiffs, minor political parties, the same four calendar years afforded to major political parties to secure continued ballot access for their candidates. For these reasons stated in prior rulings, the Court again concludes that Tenn. Code Ann. §2-1-104(24)'s 2.5% voter signature requirement to qualify as a "Recognized minor party" violates Plaintiffs' rights under the First and Fourteenth Amendments to secure ballot access for their candidates. Based upon longstanding Supreme Court precedent, Tenn. Code Ann. §2-1-114 requiring the disavowal of certain purposes of Plaintiffs' advocacy, violates Plaintiffs' First Amendment rights to free speech.

## A. History of this Litigation[2]

This action is another in a series of actions challenging Tennessee's ballot access laws. In the first action, Libertarian Party of Tennessee v. Goins, 793 F. Supp. 2d 1064 (M.D. Tenn. 2010), this Court held that the Tenn. Code Ann. § 2-1-104(a)(30) requiring party membership to sign a minor party's recognition petition violated those Plaintiffs' First Amendment right to vote, Tennessee voters' First Amendment right to privacy of their political affiliation, and Plaintiffs' First Amendment right to associate as a political party. The Court also concluded that those Plaintiffs demonstrated that Tenn. Code Ann. §2-1-104(a)(24)'s requiring signatures of registered voters representing 2.5% of the vote in the last gubernatorial election, coupled with the party membership

---

[2] This section is a modified version of the earlier description of these actions in Green Party of Tennessee v. Hargett, 953 F. Supp. 2d 816, 819-23 (M. D. Tenn. 2013).

requirement in Section 2-1-104(a)(30) and the State's election officials' 120[3] day deadline prior to the August primaries for petitions of new political parties, imposed an undue burden on Plaintiffs' First Amendment rights and effectively precluded minor political party participation in state and national elections in Tennessee.[4] The Defendants did not appeal that decision, but the Tennessee General Assembly amended the State's ballot access laws that gave rise to a second action.

In the second action, <u>Green Party of Tennessee v. Hargett</u>, 882 F. Supp.2d 959 (M. D. Tenn. 2012) ("<u>Green Party I</u>"), Plaintiffs challenged Tennessee's amended ballot access statutes affecting minority political parties and the Court held the challenged statutes unconstitutional and concluded:

> that Tennessee's 2.5% signature requirement in Tenn. Code Ann. § 2-1-104(24), and 119 day deadline for minor parties' ballot access for their candidates as a "Recognized political party", violated Plaintiffs' First Amendment rights to associate and Tennessee voters' rights to vote for such parties' candidates;
>
> that the State's "Nominating Petition" form and Tenn. Code Ann. § 2-5-102(a), violated Plaintiffs' and the signatory's First Amendment rights of association and privacy of the signatory's political beliefs by impermissibly compelling the signatory to assert support for the a minor political party's nominee's petition and that the signatory is a member of the party;
>
> that the State's requirement in Tenn. Code Ann. § 2-13-202 that minor political parties select their nominees by primary elections, is an impermissible intrusion of the Plaintiffs' First Amendment right of association that includes the right to select

---

[3]The reference to the 120 day deadline is derived from the holding in <u>Libertarian Party of Ohio v. Blackwell</u>, 462 F. 3d 579 (6th Cir. 2006) that a deadline for minor parties' filing for State's ballot access 120 days before a primary violates the First Amendment. Tennessee's prior deadline was the first Thursday in March of the election year that is actually 147 days before the primary, the first Tuesday in August. <u>Goins</u>, 793 F. Supp. 2d at 1071. In <u>Goins</u>, the Court cited other decisions holding deadlines from 60 to 119 days unconstitutional. <u>Id.</u> at 1088.

[4] Before 2011, Tennessee statutes did not set the deadline for filing petitions for recognition as a statewide political party. The State Election Coordinator set the deadline. <u>Goins</u>, 793 F. Supp.2d at 1070 n.3.

their nominees;

that Tenn. Code Ann. § 2-13-107(d), barring the words "Independent" and "Nonpartisan" in the name(s) of political parties, violates the First Amendment rights of free speech of minor political parties and their members;

that Tenn. Code. Ann. §2-1-104(a)(24) is unconstitutional as an improper delegation of legislative authority conferred on the State by Article 1, Section 4 of the United States Constitution and, in the alternative, that the undefined discretion of the State Coordinator of Elections in § 2-1-104(a)(24) fails for vagueness; and

that Tennessee's ballot preference statute listing all candidates in the order of majority party, minority party and recognized minority party violated the Equal Protection Clause

Id. at 967-68. On Plaintiffs' ballot preference statute claims, the Court directed the Defendants to conduct a random public drawing to determine the order of the parties' candidates on ballots for the November 2012 general election. Id.

On March 13, 2012, Defendants moved for a partial stay of the Order for the random drawing given the Defendants' appeal. On March 16, 2012, the Court denied that motion[5]. The Defendants then moved for the Sixth Circuit to stay the Order for the random public drawing and on August 9, 2012, the Sixth Circuit granted that motion. Green Party of Tennessee v. Hargett, 493 Fed. Appx. 686, 690 (2012). During the appeal, the Tennessee General Assembly amended the Tennessee ballot access statutes, effective May 2012, and Plaintiffs submitted new evidence on appeal. The Sixth Circuit reversed, in part and remanded two of Plaintiffs' ballot-access claims for reconsideration: (1) Plaintiffs' challenge to Tennessee's amended statutory requirements for party

[5]In this action, the Defendants also sought a stay, arguing that the Court's ruling that the 2.5% requirement is unconstitutional is on appeal. Yet, even if reversed, the Court must still consider the 2.5% statute in combination with the other statutes. Blackwell, 462 F. 3d at 568. Moreover, Plaintiffs assert separate claims on the constitutionality of Tenn. Code Ann.§2-13-107(f) and Tenn. Code Ann. §2-1-114. The Court denied the motion for a stay.

recognition and ballot access for minor political parties' candidates, and (2) Plaintiffs' challenge to Tennessee's ballot preference statute mandating the listing of the political parties' candidates on the general election ballot, namely, majority party, minority party, and "Recognized minor party". <u>Green Party of Tennessee v. Hargett</u>, 700 F.3d 816, 824, 827 (6th Cir. 2012).

Afer remand, the parties' filed cross motions for summary judgment and in <u>Green Party of Tennessee v. Hargett</u>, 953 F. Supp. 2d 816 (M. D. Tenn. 2013) ("<u>Green Party II</u>"), this Court concluded that the 2012 amendments to Tennessee's ballot access statutes retained the 2.5% signature requirement to become a "recognized political party" with ballot access for that party's candidates. The Court found this 2.5% signature requirement contrary to express Supreme Court precedents on the necessary showing of a modicum of voter support for a new political party's ballot access. The historical and expert proof also established that the 2.5% signature requirement imposed a severe burden on Plaintiffs' First Amendment rights to organize a political party and the rights of Tennessee voters to competition in political choices. In addition, based upon the parties' proof and empirical studies on the effects of ballot preference statutes relied upon by courts, including the Supreme Court, this Court concluded that Tennessee's ballot preference statute for the candidates of the majority political party violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment. In a related decision, <u>Green Party of Tennessee v. Hargett</u>, 3:11cv692, 2013 WL 4510803 (M. D. Tenn. Aug. 26, 2013) the Court awarded Plaintiffs' their attorney's fees and costs.

## B. The Current Controversy

### 1. Findings of Fact

For this current controversy, the Court incorporates by reference its earlier factual findings

on the history of minor political parties ballot access in Tennessee and the effects of Tennessee ballot laws on that access. Green Party II, 953 F. Supp.2d 823-851.[6] In essence, minor political parties have historically been unable to secure ballot access in Tennessee for their candidates. Id. at 827-29. The Defendants' experts opined that Plaintiffs face political futility in gathering the voter support to meet Tennessee's 2.5% or 40,000 plus signature requirement for recognition as a minor party on Tennessee election ballots. Id. at 831-39. Plaintiffs' expert opinion was that based upon Tennessee's historical record, minor political parties' prospects for success in obtaining recognition as a political party under Tennessee's 2.5% voter signature requirement is "'impossible, or virtually impossible.'". Id. at 831-32. See also Goins, 793 F.Supp.2d at 1073. Also noteworthy on the State's asserted interest against ballot confusion for Tennessee's restrictive ballot access laws, in 2010 there were 16 candidates listed on Tennessee's ballot for Governor and Tennessee's 2008 election, there were 8 candidates on the ballot for the United States Senate. Green Party II, 959 F. Supp.2d at 835. This high number of candidates was also cited as evidence that the state has multiple options for non-major party candidates to achieve ballot access, but not as candidates for a minor political party.

For the current controversy, according to Plaintiffs, despite the Court's prior decision granting each Plaintiffs ballot status as a "Recognized minor party" for its candidates in the 2012 elections, Tenn. Code Ann.§2-13-107(f) (2012) now operates to divest Plaintiffs of that status based on the 2012 election results. Because Plaintiffs' candidates did not receive at least 5% of the total

---

[6] As the Supreme Court observed in an election controversy, the historical record of political parties' participation in elections is relevant as "[p]ast experience will be a helpful, if not always an unerring, guide." Storer v. Brown, 415 U.S. 724, 742 (1974). Moreover, for Plaintiffs' equal protection claim, the Court "must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification. Williams v. Rhodes, 393 U.S. 23, 31 (1968).

vote in the 2012 election to qualify as "Statewide political party", Plaintiffs lost their right to continued ballot access. Plaintiffs also lost their status as a "Recognized minor party". Prior to 2011, Tennessee recognized only one type of political entity, a "statewide political party" that was entitled to continued ballot access for its candidates, provided their candidates received 5% of the total vote in the general election. Prior to 2011, any new party that satisfied the petition signature requirements of Tenn. Code Ann. §2-1- 104(a)(30)(B)[7] was granted ballot access as a "statewide political party." In 2011, the General Assembly created a new political entity, a "Recognized minor party" by adding a new section, Tenn. Code Ann. §2-1-104(a)(24), that defines a "Recognized minor party" as:

> ...any group or association that has successfully petitioned by filing with the coordinator of elections a petition which shall conform to requirements established by the coordinator of elections, but which **must at a minimum bear the signatures of registered voters equal to at least two and one-half percent (2.5%) of the total number of votes cast for gubernatorial candidates in the most recent election of governor**, and on each page of the petition, state its purpose, state its name, and contain the names of registered voters from a single county

(emphasis added).

Applying constitutional precedents and proof of Plaintiffs' prior signature campaigns, this Court granted Plaintiffs "Recognized minor party" status in Green Party II. Thereafter, the Tennessee General Assembly amended Tenn. Code Ann. §2-13-107(f)[8] in its entirety to add a new section that reads as follows:

(f) If a petition filed pursuant to this section is determined to be sufficient by the

---

[7]Tenn. Code Ann. §2-1-104(a)(30)(B) was later repealed and its requirements are in newly enacted Tenn. Code Ann. §2-1-104(a)(24).

[8]As originally enacted, Tenn. Code Ann. §2-13-107(f) did not specify a time frame within which a minor party had to satisfy the requirements to become a "statewide political party".

coordinator of elections pursuant to subsection (b), **such party shall be recognized as a minor party for all remaining primary and general elections in the current election year. To maintain recognition beyond the current election year, a minor party must meet the requirements of a statewide political party as defined in Section 2-1-104. A "Recognized political party" who fails to meet such requirements shall cease to be a "Recognized political party". Such party may regain recognition only by following the procedures for formation of a "Recognized political party".** The coordinator of elections shall advise each county election commission of a "Recognized political party"'s failure to receive a sufficient number of votes and shall order that said party cease to be recognized.

(emphasis added)." Tennessee Code Annotated § 2-1-104(a)(31) defines a "statewide political party" as "[a] political party at least one (1) of whose candidates for an office to be elected by voters of the entire state **in the past four (4) calendar years** has received a number of votes equal to at least five percent (5%) of the total number of votes cast for gubernatorial candidates in the most recent election of governor". (emphasis added).

According to Plaintiffs, the Defendants have consistently refused to acknowledge this Court's ruling that each Plaintiff satisfied the requirements for a "Recognized minor party". Yet, Defendants listed Plaintiffs' names next to the names of their candidates on the 2012 election ballot. In any event, Plaintiffs assert without dispute that Defendants refused to recognize them as "Recognized minor part[ies]" until after the Sixth Circuit denied their motion for a stay on August 9, 2012. Green Party of Tennessee, 493 Fed. Appx. at 690. As a result, Defendants effectively allowed Plaintiffs only three months before the November 2012 election to disseminate their recognized party status to the voters so as to secure the 5% minimum vote in the 2012 election necessary to acquire the status of a "statewide political parties" and thereby retain continued ballot access for their candidates in future elections.

Plaintiffs note that Tenn. Code Ann. 2-13-107(f) expressly requires the coordinator of

10

elections to notify each county election commission of a "Recognized minor party"'s failure to receive a sufficient number of votes in the general election and to order that the affected minor party shall cease to be recognized. Plaintiffs cite this statute's lack of any provision requiring prior notice and the opportunity to be heard on their loss of their status as a "Recognized minor party", as a due process violation.

## B. Conclusions of Law[9]

### 1. Facial vs. As Applied Challenge

As a threshold issue, Defendants characterize Plaintiffs' current challenge to Tennessee's minor party ballot-access and retention statutes, Tenn. Code Ann. §§ 2-1-104(a)(24) and (31) as well as 2-13-107(f)), as a "facial challenge" (Docket Entry No. 23 Defendants' Response at 3). To be sure, "a facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully," United States v. Salerno, 481 U.S. 739, 745 (1987) Yet, Defendants submitted proof and in their argument cite the history of this litigation to the effect that Plaintiffs never had "Recognized political party" status. (Docket Entry No. 23 Defendants' Response at 7-9) (citing Green Party II, 882 F.Supp.2d at 1019). Plaintiffs quote language from the opinion that "the Court deems GPT's past electoral support of almost 20,000 votes and CPT's almost 10,000 signatories to constitute a significant showing of support **to justify their recognition as political parties** and to have their parties' names next to their candidates on the general election ballot." (Docket Entry No. 19, Plaintiffs' Motion for Summary Judgment at 5) (emphasis added). Plaintiffs also cite this Court's prior ruling awarding them the status of a "Recognized minor part[ies]", citing "the foregoing facts".

---

[9] The Court incorporates by reference its prior analysis of summary judgment principles. Green Party I, 882 F. Supp2d at 986-91.

Id. at 3.

To ignore the history of this litigation and the facts that were the bases for this Court's prior rulings, is unrealistic, imprudent and contrary to applicable law. As the Supreme Court observed in an election controversy, the historical record of political parties' participation in elections is relevant as "[p]ast experience will be a helpful, if not always an unerring, guide." Storer, 415 U.S. at 742. In addition, for Plaintiffs' equal protection claim based upon the effects of Tenn. Code Ann. §2-13-107(f), the Supreme Court stated in an election controversy: "In determining whether or not a state law violates the Equal Protection Clause, **we must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification**". Williams v. Rhodes, 393 U.S. at 31. (emphasis added and footnote omitted). Thus, in deciding this current controversy that directly impacts the named Plaintiffs, the Court considers this challenge to be an "as applied" challenge. As stated earlier, the Court incorporates by reference its earlier factual findings on Plaintiffs' and other minor political parties' experiences in securing ballot access in Tennessee.

## 2. Plaintiffs' First and Fourteenth Amendment Claims

For their motions for summary judgment, Plaintiffs argue that based upon this Court's prior factual findings, rulings and precedents cited therein, Tenn. Code Ann. §2-1-104(a)(24)'s requirement of 2.5% signature requirement for status as a "Recognized minor party" is unconstitutional. Plaintiffs also contend that the combined effects of Tenn. Code Ann. §2-13-107(f) and Tenn. Code Ann. §2-1-104(a)(24) impose an unconstitutional burden on Plaintiffs' First and Fourteenth to secure ballot access for their candidates as "Recognized minor part[ies]" Upon disqualification by Section 2-13-1087(f), Plaintiffs are required to satisfy the same 2.5%

12

requirement in Section 2-1-104 (24) that this Court held to be unconstitutional. Plaintiffs further

assert that such laws lack any legitimate State purpose and render their achievement of Section's 2-

13-107(f) requirement of 5% of the total vote to qualify as a "Statewide political party" for continued

ballot access, virtually impossible. Plaintiffs contend that Tennessee is the only state that gives a

newly recognized political party only one election year to qualify for continued ballot access.

Plaintiffs describe Section 2-13-107(f) as depriving them of their property rights acquired under the

Court's earlier rulings without due process of law.

In defense of Tenn. Code Ann §§ 2-1-104(24) and 2-13-107(f), the Defendants rely on

Jenness v. Fortson, 403 U. S 431 (1971) and American Party of Texas v. White, 415 U.S. 767

(1974). In those decisions, the Supreme Court upheld Georgia's and Texas's two tiered system of

ballot access: (1) a lower percentage of voter signature requirement to secure ballot access and (2)

a higher percentage of votes in the last general election to retain continued ballot access.

As to the standards for evaluating Plaintiffs' constitutional challenges to State ballot

access laws:

> [I]t is especially difficult for the State to justify a restriction that limits political
> participation by an identifiable political group." Anderson, 460 U.S. at 793, 103 S.Ct.
> 1564. Strict scrutiny applies if the state law "burdens the rights of political parties
> and their members." Eu v. San Francisco County Democratic Cent. Committee, 489
> U.S. 214, 222, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989). "To the degree that a State
> would thwart this interest by limiting the access of new parties to the ballot, [the
> Court has] called for the demonstration of a corresponding interest sufficiently
> weighty to justify the limitation." Norman v. Reed, 502 U.S. 279, 288–89, 112 S.Ct.
> 698, 116 L.Ed.2d 711 (1992) (emphasis added). Yet, "minor barriers between voter
> and party do not compel strict scrutiny." Blackwell, 462 F.3d at 604 (citing Bullock
> v. Carter, 405 U.S. 134, 143, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972)). Although state
> voting regulations "are not automatically subjected to heightened scrutiny," id. at
> 585, **the Sixth Circuit cited decisions of district courts in this Circuit and other
> Circuits ... [that] applied the "strict scrutiny" standard to similar ballot access
> laws setting percentages and deadlines for recognition of minor political parties.**

**Id. at 590–91.**

Green Party I, 882 F.Supp.2d at 998 (emphasis added). Because Tenn. Code Ann. §2-1-104(a)(24) and Tenn. Code Ann. §2-13-107(f) set percentages of voter signatures or votes for ballot access for minor political parties, the Court applies the "strict scrutiny" analysis requiring the Defendants to demonstrate a "compelling state interest" to justify these statutory percentages.

The First and Fourteenth Amendments establish "[t]he right of citizens to create and develop new political parties". Norman v. Reed, 502 U.S. 279, 288 (1992). "New parties struggling for their place **must have the time and opportunity** to organize in order to meet reasonable requirements for ballot position, **just as the old parties have had in the past.**" Williams, 393 U.S. at 32. "A burden that falls unequally on new or small political parties or independent candidates impinges, by its very nature, on associational choices protected by the First Amendment." Anderson v. Celebrezze, 460 U.S. 780, 793 (1983). In sum,

> For more than two decades, this Court has recognized the constitutional right of citizens to create and develop new political parties. The right derives from the First and Fourteenth Amendments and advances the constitutional interest of like-minded voters to gather in pursuit of common political ends, thus enlarging the opportunities of all voters to express their own political preferences To the degree that a State would thwart this interest by limiting the access of new parties to the ballot, we have called for the demonstration of a corresponding interest sufficiently weighty to justify the limitation, and we have accordingly required any severe restriction to be narrowly drawn to advance a state interest of compelling importance.

Norman, 502 U. S. at 288-89 (citations and footnote omitted).

In this analysis, the Sixth Circuit cautioned that "the State may not be a 'wholly independent or neutral arbiter' as it is controlled by the political parties in power, 'which presumably have an incentive to shape the rules of the electoral game to their own benefit.'" Blackwell, 462 F.3d at 587 (quoting from Clingman v. Beaver, 544 U.S. 581(2005) (O'Conner, J., concurring). "[W]hile states

enjoy a wide latitude in regulating elections and in controlling ballot content and ballot access, they must exercise this power in a reasonable, nondiscriminatory, **politically neutral fashion**." Texas Democratic Party v. Benkiser, 459 F.3d 582, 590 (5th Cir. 2006) quoting Miller v. Moore, 169 F.3d 1119, 1125 (8th Cir. 1999) (emphasis added).

In the initial party recognition decision in Williams, the Supreme Court observed: "**The right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes.** So also, the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot. In determining whether the State has power to place such unequal burdens on minority groups where rights of this kind are at stake, the decisions of this Court have consistently held that 'only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms.'" 393 U. S. at 31 (quoting NAACP v. Button, 371 U.S. 415, 438 (1963) with emphasis added).

Here, Plaintiffs cite Norman where the Supreme Court described their First and Fourteenth Amendments rights to include "[t]he right of citizens to create **and develop** new political parties" 502 U.S. at 288 (emphasis added by Plaintiffs). Plaintiffs cite as significant that the Supreme Court went beyond the right to "create" new parties to add the right to "develop" new parties. Norman involved an Illinois election statute prohibiting a new party from use of a name in one district after that party name had been used in another district that was held to be unconstitutional. Id. at 289-91. In addition, the Illinois signature requirement that had the effect of requiring more signatures for ballot access in a multidistrict political subdivision than required for statewide ballot access, was unconstitutional. Id. at 291-94. Yet, the State statue requiring 25,000 voter signatures in the City of

Chicago and the same amount in the Chicago suburbs to secure a new political party's ballot access for county election, was held to be reasonable. Id. at 295.

In a more recent decision, Timmons v. Twin Cities Area New Party, 520 U.S. 351, 361 (1997), the Supreme Court identified Norman, as involving state laws that "foreclose[d] the development of any political party lacking the resources to run a statewide campaign". (quoting Norman 502 U.S., at 289). The importance of party affiliation on the ballot is critical because"[t]o the extent that party labels provide a shorthand designation of the views of party candidates on matters of public concern, the identification of candidates with particular parties plays a role in the process by which voters inform themselves for the exercise of the franchise." Tashjian v. Republican Party, 479 U.S. 208, 220 (1986) As one district stated aptly "if [a] party cannot consistently maintain ballot access for its candidates, then the party cannot gain public support." Patriot Party of Pa. v. Mitchell, 826 F.Supp. 926 fn 19 (E.D. Pa. 1993).

Here, as a factual matter, prior to 2012, Plaintiffs had been unsuccessful in securing ballot access for their parties' candidates with their parties' names. By Court Order, Plaintiffs' candidates were on the Tennessee ballot for the 2012 election, but by virtue of Section 2-13-107(f), Plaintiffs are now ineligible for continued ballot access for their candidates' failures to secure 5% of the total vote in the 2012 election. This result occurs notwithstanding that Section 2-1-104(a)(31) affords "statewide political parties" **"the past four (4) calendar years"** to meet this 5% requirement. (Emphasis added). By operation of the Tennessee ballot access statutes, Plaintiffs were not afforded the opportunity of the three calendar years prior to the 2012 election, to run a candidate with his or her party name, who could secure 5% of the vote. To retain ballot access, in just one election, Plaintiffs had to secure 5% of the total vote in the 2012 election. As this Court previously found on

this 5% requirement:

> In 2000 with the "Fair Ballot Access Act of 2000," the Tennessee legislature authorized ballot access for the 2000 presidential election for candidates who polled 5,000 votes for the presidential race in 1996. Qualifying candidates could have their political party's name printed next to their names on the November 2000 ballot. **After the 2000 election, a non-statewide political party's name could be listed next to the name of its presidential candidate, if that party's candidate received at least 5% of the votes in Tennessee's last presidential election. Tenn.Code Ann. § 2–5–208(d)(1).** In the 2000 presidential election, presidential candidates of the Libertarian, Reform, and Green parties had their respective party name next to their candidates' names, but their candidates were still listed on the election ballot under an "Independent" heading. **Since the 2000 general election, Tennessee and Oklahoma are the only states in which only the Democratic and Republican parties have appeared on the election ballots.**

Green Party I, 882 F. Supp.2d. at 969-70 (emphasis added and footnote citing Goins, 793 F.Supp.2d at 1070 omitted). Moreover, with historical support, Plaintiffs' expert characterized minor political parties' prospects for success of obtaining recognition as a state-wide political party in Tennessee as "impossible, or virtually impossible." Green Party I, 882 F. Supp2d at 877 (quoting Goins, 793 F.Supp.2d at 1073 (quoting Docket Entry No. 25–3, Plaintiffs' Amended Expert Report at 7)).

Applying Williams and consistent with Tenn. Code Ann. §2-1-104(a)(31) for "statewide political parties, Plaintiffs, as **"[n]ew parties struggling for their place must have the time and opportunity to organize** in order to meet reasonable requirements for ballot position, just **as the old parties have had in the past**" 393 U. S. at 32. (Emphasis added). Because statewide political parties were afforded four calendar years to satisfy the 5% voter requirement, Williams requires the same time period for Plaintiffs, as "Recognized minor part[ies]". Such a time period is also consistent with Norman's requirement that the First and Fourteenth Amendments include "[t]he right of citizens to create **and develop** new political parties…" 502 U.S. at 288 (emphasis added).

Without this conclusion, to regain their stature as a "Recognized minor party" after the 2012 election, Section 2-1-104(24) requires each Plaintiff to collect voter signatures totaling 2.5% of the voters in the last gubernatorial election. This is the same 2.5% signature requirement that this Court found to produce exclusionary effects for minor political parties and to be unconstitutional under White, and other precedents.

> Under Tennessee 2011 amendments, to satisfy the petition requirements for a "Recognized minor party" in Tenn. Code Ann. § 2–1–104(a)(24), Plaintiffs must collect 2.5% of the votes in the last gubernatorial election that undisputedly translates to 40,039 valid signatures of registered voters. Plaintiffs note that only five states have a higher petition signature requirement than Tennessee, and except for Alaska, those States' populations far exceed Tennessee's population. Plaintiffs also contend that the rule of thumb is that Plaintiffs must actually collect between 1.5–1.75 times the minimum number of signatures required to assure compliance with a state laws. Thus, Plaintiffs assert that as minor parties, Plaintiffs must actually collect in excess of 60,000 signatures for state recognition and ballot access for its candidates. Plaintiffs' proof is that to collect the necessary signatures, minor parties party must utilize paid persons to collect signatures at market cost of between $1.50–2.00 per signature yielding $120,000 in costs to meet Tennessee's 2.5% requirement. (Docket Entry No. 20, Winger Report at 29). This amount depletes Plaintiffs' resources for its electoral activities. Although the Defendants dispute this amount, the Court does not deem this dispute a material factual dispute in light of the applicable law.
>
> As to the requested percentage of signatures, the Defendants cite and as the Court observed in Goins, multiple decisions of the Supreme Court and Circuit courts upholding as high as five percent (5%) of the total vote for political party recognition and ballot access as constitutional. See e.g., American Party of Texas, 415 U.S. at 789, 94 S.Ct. 1296 ("Demanding signatures equal in number to 3% or 5% of the vote in the last election is not invalid on its face"); Storer, 415 U.S. at 739–40, 94 S.Ct. 1274 (5% requirement not facially unconstitutional); Jenness v. Fortson, 403 U.S. 431, 438–39, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971) (upholding Georgia statute requiring signatures of 5% of registered voters before independent candidates could be placed on ballot). To be sure, other circuits have upheld higher percentage requirements. Cartwright v. Barnes, 304 F.3d 1138, 1141–42 (11th Cir.2002) (reaffirming constitutionality of Georgia 5% signature requirement); Rainbow Coalition of Okla. v. Oklahoma State Election Bd., 844 F.2d 740, 741–42, 744 (10th Cir.1988) (upholding Oklahoma statute requiring signatures of 5% of the number of votes cast in the most recent election)

Other Circuits have upheld state laws requiring 2% to 3% of the total vote for ballot access as a recognized political party. Swanson v. Worley, 490 F.3d 894, 905 (11th Cir.2007) (upholding Alabama statute requiring independent candidates obtain signatures of 3% of vote in last gubernatorial election); Rogers v. Corbett, 468 F.3d 188, 195 (3rd Cir.2006) (uphold Pennsylvania statutes requiring candidate of minor political party obtain signatures of 2% of vote in last election); Libertarian Party of Florida v. Florida, 710 F.2d 790, 792–95 (11th Cir.1983) (upholding Florida statute requiring minor party candidate obtain signatures of 3% of all registered voters to appear on general election ballot). The Court agrees that for a facial challenge, the 2.5% requirement alone is a reasonable state regulation for the reasons set forth by the esteemed late jurist William M. Leech, sitting as Special Justice in Tennessee Libertarian Party v. Democratic Party, 555 S.W.2d 102, 103–05 (Tenn.1977). Goins focused on the percentage requirement of this statute and prior case law. Unlike in Goins, Defendants present empirical evidence from their experts that must be considered.

Here, citing empirical evidence, Defendants' experts opine, in essence, that for Plaintiffs, as minor political parties, to obtain significant voter support in Tennessee, is an act of political futility. In American Party of Texas where minority candidates had to obtain 1% of the vote for governor at last general election, 415 U.S. at 782, 94 S.Ct. 1296, the Court stated: "what is demanded may not be so excessive or impractical as to be in reality a mere device to always, or almost always, exclude parties with significant support from the ballot," 415 U.S. at 783, 94 S.Ct. 1296. Yet, aside from mere percentages, the Court deems probative that in American Party of Texas, the Supreme Court stated: **"The District Court recognized that any fixed percentage requirement is necessarily arbitrary, but we agree with it that the required measure of support –1% of the vote for governor in the last general election and in this instance 22,000 signatures-falls within the outer boundaries of support the State may require before according political parties ballot position."** 415 U.S. at 783, 94 S.Ct. 1296 (emphasis added). Here, Tennessee far exceeds this outer limit of 22,000 signatures in American Party of Texas. Given the significantly higher 2 million voters in Texas, Tennessee's outer limit should be significantly lesser than 22,000.

In Blackwell, Ohio's political party registration signature requirement was one percent of the total vote cast in the previous election or 30,000 signatures. The Sixth Circuit observed that: "The evidence in the record shows that in Ohio, elections have indeed been monopolized by two parties, and thus, the burdens imposed by the state's election laws are 'far from remote.' ... Ohio is among the most restrictive, if not the most restrictive, state in granting minor parties access to the ballot. Of the eight most populous states, Ohio has had by far the fewest minor political parties on its general election ballot.' " 462 F.3d at 589 (citing California Democratic Party v. Jones, 530 U.S. 567, 578, 120 S.Ct. 2402, 147 L.Ed.2d 502 (2000)).

This empirical proof from Plaintiffs' and Defendants' experts converts Plaintiffs' challenge into or resembles an "as applied" challenge. The Defendants also submitted proof beyond historical facts. The Defendants' expert proof cites electoral outcomes for minor political parties in other States and Tennessee's electoral outcomes for minor political parties that show lesser support for minor political parties in Tennessee than in other States. With the "Winner take All" electoral rule, Defendants' experts opine that Plaintiffs face political futility in gathering the voter support to meet Tennessee's 40,039 signature requirement. Plaintiffs' expert opinion was that based upon Tennessee's historical record, minor political parties' prospect for success of obtaining recognition as a state-wide political party in Tennessee is "'impossible, or virtually impossible.'" Goins, 793 F.Supp.2d at 1073 (quoting Docket Entry No. 25–3, Plaintiffs' Amended Expert Report at 7).

Thus, these undisputed facts satisfy the Court that Tennessee 2.5 % signature requirement to be a "Recognized minor party", that requires 40,039 signatures of registered voters, in its effects, constitutes an undue and impermissible burden upon Plaintiffs' First Amendment rights to associate as minor political parties and to secure ballot access for their candidates for whom Tennessee voters would have the opportunity to vote.

Green Party I, 889 F. Supp.2d at 1005-007.

After one election, this Tennessee statute, alone and in combination with Tenn. Code Ann. § 2-13-107(f), produces the effect that Plaintiffs are "foreclosed" within the meaning of Norman and Timmons, from ballot access to "develop" their parties and their candidates. Applying Williams, White and Norman, the Court concludes that these ballot access statues unduly burden Plaintiffs' First and Fourteenth Amendment rights to create and develop their political parties by imposing unreasonable regulations for ballot access upon Plaintiffs as minor political parties.

As to the Defendants' reliance on Jenness and White, Jenness involved Georgia election laws that created "political parties" and "political bodies" and established a two tiered ballot access system. 403 U.S. at 433. "Political parties" were parties whose candidates received at least 20% of the vote in the most recent presidential or gubernatorial election. Id. Securing such a vote entitled that candidate's party to automatic ballot access for the next election. Id. Any other political

organization was defined as a "political body." Id. Georgia law provided for the identification of a candidate's minor-party (i.e., "political body") affiliation, if any, on both the nominating petition, Ga.Code Ann. § 34–1010(d) (1970 rev.), and the general election ballot. § 34–1103(c). A nominee of a "political body" had to secure at least 5% of the total number of eligible voters in the last election for the office to secure ballot access for the general election. Id. The Supreme Court upheld this two tiered system because: "In a word, Georgia in no way freezes the status quo." Id. at 439. Here, Tennessee's two tiered system, in fact, freezes the status quo of the two major political parties.

In White, the Supreme Court upheld a Texas ballot access system under which to gain ballot access, the political party's candidates had to secure the signatures of 1% of the total votes cast in the prior gubernatorial election, but to retain ballot access for future elections, the political party had to receive 2% of the total vote in the last general election. 415 U.S. at 777, 780. As described in Green Party I, under the Texas system approximately 22,000 voter signatures were required for ballot access and 44,000 votes for continued ballot access. Green Party I, 882 F. Supp.2d at 1006. Unlike White, Tennessee's scheme doubles those amounts for a less populous State. Id.

To be sure, in Timmons, the Supreme Court stated that a State may enact laws that "favor the traditional two party system" and that "States also have a strong interest in the stability of their political systems", but the Court also stated that "[t]his interest does not permit a State to completely insulate the two-party system from minor parties' or independent candidates' competition and influence". 520 U.S. at 367. In Timmons, the Supreme Court quoted Anderson, where the court "recognized that the 'asserted interest in political stability amounts to a desire to protect existing political parties from competition,' and rejected that interest," Id, at 379 n. 7. In Sweezy v. New Hampshire, 354 U.S. 234, 250–51(1957), the Supreme Court stated that "[a]ll political ideas cannot

21

and should not be channeled into programs of our two major parties. History has amply proved the virtue of political activity by minority, dissident groups, who innumerable times have been in the vanguard of democratic thought and whose programs were ultimately accepted. ... The absence of such voices would be a symptom of grave illness in our society". These First Amendment values retain their force.

Based upon these precedents and the facts on Plaintiffs' and other minor political parties' ballot access in Tennessee, the Court concludes that the provisions of Tenn. Code Ann. §§2-1-104(24), 2-1-104(31) and 2-13-107(f), alone and in combination, effectively foreclose Plaintiffs' rights under the First and Fourteenth Amendment to "create **and develop** new political parties" in Tennessee. Norman, 502 U.S. at 288[10]. The Court also concludes that these Tennessee statutes unduly burden Plaintiffs' rights to ballot access for their candidates to the detriment of Plaintiffs, their candidates and members and Tennessee voters[11]. These statutes also operate "to completely

---

[10] As stated earlier, because these statutes set percentages for ballot access, the Court concluded that the strict scrutiny standard applies. Supra at 13, citing Blackwell, 462 F.3d at 590-91. Based upon the proof and the effects of these Tennessee statues, the Court would reach the same conclusion applying the balancing test in Anderson, under which "the Supreme Court focus[es] on the degree to which the challenged restrictions operate as a mechanism to exclude certain classes of candidates from the electoral process. The inquiry is whether the challenged restriction unfairly or unnecessarily burdens the availability of political opportunity. Anderson, 460 U.S. at 793 (quoting Clements v. Fashing, 457 U.S. 957, 964 (1982) (plurality opinion)) "The State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot." Anderson, 460 U.S. at 788–89. "To the degree that a State would thwart this interest by limiting the access of new parties to the ballot, [the Court has] called for the demonstration of a corresponding interest sufficiently weighty to justify the limitation." Norman, 502 U.S. at 288–89. Here, the effects of Tennessee ballot access laws for minor political parties are exclusionary and unduly burdensome without any showing of a legitimate corresponding State interest.

[11] "Any interference with the freedom of a party is simultaneously an interference with the freedom of its adherents. All political ideas cannot be channeled into the programs of our two

insulate

the two-party system from minor parties' or independent candidates' competition and influence".
Timmons, 520 U.S. at 367.

Plaintiffs' procedural and substantive due process claims are that without notice or an opportunity to be heard, Tenn. Code Ann. 2-13-107(f) deprives Plaintiffs of their property interests in their status as "Recognized political part[ies]". Plaintiffs state that this status was awarded by Court Order and constitutes a property right. Procedural due process generally requires that the State provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest. Thompson v. Ashe, 250 F.3d 399, 407 (6th Cir. 2002) ("Courts have long recognized that the Fourteenth Amendment requires that an individual who is deprived of an interest in liberty or property be given notice and a hearing."). "Substantive due process cases typically apply strict scrutiny in the case of a fundamental right... When a fundamental right is recognized, substantive due process forbids the infringement of that right 'at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.'" Witt v. Department of Air Force, 527 F.3d 806, 817 (9th Cir. 2008) (citing Flores, 507 U.S. at 301-02).

As applied here, both White and Jennes illustrate that ballot status can be revoked by state statutes without prior notice and opportunity to be heard. White and Jennes also allow a higher voter percentage requirement for continued ballot access. Thus, the Court does not discern a procedural or substantive due process claim in this statutory setting for the deprivation of any

---

major political parties. History has amply proved the virtue of political activity by minority, dissident groups, who innumerable times have been in the vanguard of democratic thought and whose programs were ultimately accepted .... The absence of such voices would be a symptom of grave illness in our society." Sweezy, 354 U.S. at 250–51..

property interest based upon Plaintiffs' court ordered status as a "Recognized minor party". The Court's ruling grants Plaintiffs the opportunity to develop a political party and that ruling renders these due process claims moot. Plaintiffs will be entitled to the same ballot access, as Tennessee law and history, afforded to statewide political parties.

### 3. Plaintiffs' Equal Protection Claim

Plaintiffs' next claim is that Tenn. Code Ann. §2-13-107(f) violates the Equal Protection Clause because Plaintiffs as "Recognized political part[ies]" are allowed only one election year to win 5% of the general election vote to retain their right to ballot access where, in contrast, Tenn. Code Ann. §2-1-104(a)(31) grants "Statewide political parties" four calendar years for any of their candidates to meet the same 5% statutory requirement to retain their parties' rights to ballot access for all of their candidates.

"The Equal Protection Clause provides that 'all persons similarly situated should be treated alike.'" City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "[A] status-based enactment divorced from any factual context from which we could discern a relationship to legitimate state interests; it is a classification of persons undertaken for its own sake, something the Equal Protection Clause does not permit." Romer v. Evans, 517 U.S. 620, 635 (1996). An Equal Protection claim may be based on the assertion that a state action was undertaken for "spiteful" purposes, even for "a class of one." Village of Willowbrook v. Olech, 528 U.S. 562 (2000). The Equal Protection Clause especially prevents States from making distinctions that burden a fundamental right or intentionally treat one individual differently from others similarly situated without any rational basis. Radvansky v. City of Olmsted Falls, 395 F.3d 291, 312 (6th Cir. 2005)

"Certain classifications [] in themselves supply a reason to infer antipathy." Personnel Adm'r

of Mass. v. Feeney, 442 U.S. 256, 271. As the Supreme Court explained in <u>Village of Arlington</u> <u>Heights v. Metro. Hous. Dev. Corp.</u>, 429 U.S. 252, 266 (1977) "Sometimes a clear pattern, unexplainable on [other] grounds ... emerges from the effect of the state action even when the governing legislation appears neutral on its face.". Once they become ballot qualified, "recognized minor parties" are indistinguishable from "statewide political parties" for electoral purposes. "[W]hile states enjoy a wide latitude in regulating elections and in controlling ballot content and ballot access, they must exercise this power in a reasonable, nondiscriminatory, **politically neutral fashion**." <u>Benkiser</u>, 459 F.3d at 590. Thus, Plaintiffs are entitled to all the rights and privileges enjoyed by "statewide political parties," and any denial of these rights and privileges violates Equal Protection principles.

Under current law, "statewide political parties" have four calendar years to establish their entitlement to retain their ballot-qualified status for their candidates; but Plaintiffs, as "Recognized minor part[ies]" had only one election year in which to qualify as a "statewide political party", a status that historically, Plaintiffs have been unable to achieve in Tennessee. Plaintiffs assert that this statutory scheme is an obvious attempt to increase the burdens on minor parties, such as Plaintiffs. In any event, the Court finds that Tenn Code Ann. §§ 2-1-104(a)(31) and 2-13-107(f) impose unequal time burdens that are not politically neutral in terms of the period of time allowed to qualify for continued ballot access. Thus, the Court concludes that Plaintiffs should be awarded summary judgment on their equal protection claims.

### 4. Defendants' Defense of Tenn. Code Ann. §2-1-114

Finally, Plaintiffs assert that: "Tenn. Code Ann. §2-1-114 unconstitutionally impairs the free speech rights of Plaintiffs" (Docket Entry No. 1, Complaint at ¶ 35). Tenn. Code Ann. §2-1-114

provides that:

> No political party may have nominees on a ballot or exercise any of
> the rights of political parties under this title until its officers have
> filed ... [a]n affidavit under oath that it does not advocate the
> overthrow of local, state or national government by force or violence
> and that it is not affiliated with any organization which does advocate
> such a policy . . .

Plaintiffs also cite Art. I, Sec. 1 of the Tennessee Constitution that:

> "...**all power is inherent in the people**, and all free governments are founded on
> their authority, and instituted for their peace, safety, and happiness; for the
> advancement of those **ends they have at all times, an unalienable and indefeasible
> right to alter, reform, or abolish the government in such manner as they may
> think proper.**

(emphasis added). Defendants assert that Plaintiffs lack standing to challenge the constitutionality

of Tenn. Code Ann. §2-1-114 or alternatively that the Democratic and Republican parties have

submitted such affidavits. Defendants argue that the State constitution cannot be a ground for relief

on Plaintiffs' federal claims.

As to the Defendants' standing contention, election laws fall under the "capable of repetition,

yet evading review" exception to the mootness doctrine. Norman, 502 U.S. at, 287-88. Where, as

here, "there is a reasonable expectation or a demonstrated probability that the controversy will recur"

Libertarian Party of Ohio, 462 F.3d at 584, and given that Plaintiffs will be restored to their ballot

access, the Court concludes that the Defendants' standing contention lacks merit.

As to the merits of this claim, in Communist Party of Indiana v. Whitcomb, 414 U.S. 441

(1974) the Supreme Count considered the constitutionality of an Indiana statute, Ind. Ann. Stat. §

29-3812 (1969) that provided, in part, that:

> "no existing or newly-organized political party or organization shall be permitted on
> or to have the names of its candidates printed on the ballot used at any election until

it has filed an affidavit, by its officers, under oath, that it does not advocate the overthrow of local, state or national government by force or violence"."

Id. at 442-43

In a unanimous opinion, the Supreme Court held this statute unconstitutional reasoning that:

"'(L)ater decisions have fashioned the principle that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. As we said in Noto v. United States, 367 U.S. 290, 297—298 (81 S.Ct. 1517, 1520—1521, 6 L.Ed.2d 836) (1961), 'the mere abstract teaching . . . of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action.' . . . A statute which fails to draw this distinction impermissibly intrudes upon the freedoms guaranteed by the First and Fourteenth Amendments. It sweeps within its condemnation speech which our Constitution has immunized from governmental control. Cf. Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957) . . . .' Id., at 447—448, 89 S.Ct., at 1829.

This principle that 'the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action' has been applied not only to statutes that directly forbid or proscribe advocacy.

Id. at 448.(quoting Brandenburg v. Ohio, 395 U.S. 444,447-48 (1969)).

Based upon Whitcomb, the Court concludes that to compel Plaintiffs' compliance with Tenn. Code Ann. §2-1-114 would violate Plaintiffs' First Amendment rights. To be sure, there is not any proof that Plaintiffs advocate such ideas or that the Defendants enforce this statute, but the chilling effect of such a statute warrants this ruling. Yet, the Court agrees with the Defendants that Tennessee's constitutional provision cited by Plaintiffs cannot be the basis for federal relief in a Section 1983 action.

For these collective reasons, the Court concludes that the Plaintiffs' motions for summary

judgment should be granted to declare Tenn. Code Ann. §§ 2-1-104(a)(24), 2-1-104(a)(31) and 2-13-107(f) unconstitutional under Supreme Court precedents on Plaintiffs' rights under the First and Fourteenth Amendment to create and develop their political parties. The Court further concludes that these statues also operate to deny Plaintiffs their rights under the Equal Protection Clause by denying Plaintiffs equal access to the ballot as afforded "statewide political parties". In addition, under Supreme Court precedent, Tenn. Code Ann. § 2-1-114 is unconstitutional under the First Amendment as a violation of Plaintiffs' rights of free speech.

An appropriate Order is filed herewith.

Entered this the _14th_ day of March, 2014

William J. Haynes, Jr.
Chief United States District Judge